COMMONWEALTH *vs.* WILLIAM P. CHARLAND.

Barnstable.    March 2, 1959. — April 2, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Evidence,* Relevancy and materiality, Of speed. *Way,* Public: what constitutes. *Jury and Jurors. Practice, Criminal,* Isolation of jury.

At the trial of a complaint under G. L. c. 90, § 24 (2) (a), for operating an automobile upon a way negligently so as to endanger the lives or safety of the public, testimony from the driver of an automobile with which the defendant's automobile collided and from the driver of an automobile following the defendant as to the speed of the defendant's automobile at the time of the collision was pertinent on the issue of his negligence. [744]

Evidence that a collision of motor vehicles occurred at a rotary traffic circle where there was an island on which there were a large directional sign and a flashing yellow light and whence five highways ran out warranted a finding that the road at the place of collision was a way within G. L. c. 90, § 1, § 24 (2) (a), for the purposes of a prosecution of the operator of one of the vehicles for operating it upon a way negligently so as to endanger the lives or safety of the public. [744]

At the trial of a complaint for a motor vehicle law violation, there was no error in denial of motions by the defendant for discharge of the jury and empanelling of a new jury on the ground that some or all of the jurors during recesses and intermissions had mingled and conversed with "spectators, witnesses, police officers, and registry of motor vehicles inspectors," or in denial of a motion by the defendant for a directed verdict on the ground that "the jurors have not been sequestered," where the defendant declined the trial judge's offer to inquire of the jurors "if they had discussed this case with anyone" and there was no evidence that any of the jurors had done so or that the case had been discussed in their presence. [745–746]

COMPLAINT, received and sworn to in the First District Court of Barnstable on July 15, 1957.

Upon appeal to the Superior Court the case was tried before *Callan*, J., a District Court judge sitting under statutory authority.

*Timothy J. McInerney*, for the defendant.

No argument nor brief for the Commonwealth.

WILLIAMS, J. The defendant was convicted of a violation of that portion of G. L. c. 90, § 24 (2) (a), which imposes a penalty for operating a motor vehicle upon any way or in any place to which the public has a right of access negligently so that the lives or safety of the public might be endangered. See *Commonwealth* v. *Pentz*, 247 Mass. 500. Exceptions on which the defendant relies relate to the failure of the judge to "sequester" the jury, to his rulings on evidence, and to his denial of a motion for a directed verdict. From what little evidence is set forth in the bill of exceptions and from photographs and a sketch of the locus incorporated by reference therein, it appears that the complaint followed a head on collision of two automobiles, one driven by the defendant and one by one Atlas.

The collision occurred at about 12:50 A.M. on July 14, 1957, at a rotary traffic circle in Barnstable where Route 132

intersects with Route 6. It could have been found that the defendant was negligent after entering the circle from Route 132, in proceeding around it clockwise and to his left. He excepted to the introduction of a certified copy of the rules and regulations of the department of public works issued under G. L. c. 85, § 2, but has not argued this exception. These rules provided that "[w]ithin areas specified and posted by the department for rotary traffic" operators shall proceed only in a rotary counterclockwise direction except when otherwise directed by a police officer.

He also excepted to the admission of the testimony of Atlas, the driver of the automobile which was in collision with the automobile of the defendant, that immediately prior to the collision he estimated the speed of the defendant's automobile to be at least forty-five miles per hour, and the testimony of one Norton, a cab driver who was following the defendant, that the latter's speed was forty-five to fifty miles per hour. There is no merit to these exceptions. The question of the defendant's speed at the time of the collision was pertinent on the issue of his negligence. The witnesses were in position where they had adequate opportunity to estimate the defendant's speed. See *Logan* v. *Goward,* 313 Mass. 48, 51; *Smith* v. *Neibauer Bus Co.* 328 Mass. 624, 626–628.

At the conclusion of the evidence the defendant excepted to the denial of his motion for a directed verdict on the ground that the Commonwealth had not proved that the acts of the defendant had occurred on a public way. G. L. c. 90, § 1. *Commonwealth* v. *Clancy,* 261 Mass. 345, 348. The evidence disclosed that there was a ten foot sign on the rotary marked "Rotary, Keep Right," with an arrow pointing to the right; that the rotary circle was an island bounded by curbing on which were a flashing yellow light and the above sign; and that five highways ran from it in various directions. It is plain that the evidence was sufficient to warrant a finding that the road at the place of collision was a way within the meaning of the statute. *Commonwealth* v. *Mara,* 257 Mass. 198, 209. *Commonwealth* v. *Leone,*

250 Mass. 512. Cf. *Commonwealth* v. *Harris*, 257 Mass. 434.

The bill of exceptions states that "During and after the empanelling of the jury, on three occasions during the presentation of the Commonwealth's evidence, at the close of the Commonwealth's evidence, at the close of the defendant's evidence, at the time of argument, and at the time of the court's charge to the jury, counsel for defendant moved for discharge of the jury and empanelling of a new jury on the ground . . . that some or all of the jurors had, during the various recesses and intermissions of court and jury during the trial, mingled with, spoke to and were spoken to by spectators, witnesses, police officers, and registry of motor vehicles inspectors. The court asked defendant's counsel if he desired the court to inquire of the jurors if they had discussed this case with anyone, to which the attorney for the defendant replied 'No, I don't want you to do that as they might take it out on me' or words to that effect. At the close of the Commonwealth's evidence, defendant moved for a directed verdict on the ground, inter alia, that 'the jurors have not been sequestered.'"

It is settled practice in the trial of noncapital felonies as well as misdemeanors to allow the jurors to separate when not actually engaged in the trial. *Commonwealth* v. *Costello*, 128 Mass. 88, 89. In other cases where there is occasion to anticipate the exercise of improper influence, the judge may order the jurors locked up (see *Commonwealth* v. *Demboski*, 283 Mass. 315, 319–320) but there is no requirement that he do so. "Jurors are presumed to be, and are, with those exceptions that must always exist, men of intelligence, of good moral character, and fully competent and desirous to do their duty in the matters submitted to them. It is not to be presumed that they will be affected by casual observations made in their presence, or even to them." *Commonwealth* v. *White*, 147 Mass. 76, 79. If it is brought to the judge's attention that during the course of a trial incidents have occurred which may have prevented a fair trial, he may order that the case be retried. See *Commonwealth* v.

*Theberge,* 330 Mass. 520, 530; *Hilton* v. *McDonald,* 173 Mass. 124. In the present case there was no evidence that any of the jurors had discussed the case with any of the persons to whom the defendant's counsel referred or that any discussion of the case had taken place in their presence. There was no error in the manner in which the judge dealt with the defendant's representations.

*Exceptions overruled.*